IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

JUDY CRAMER,  Civil Action No.   21-412

    Plaintiff,

v.

C. HARPER FORD,

    Jury Trial Demanded

    Defendant.

## CIVIL COMPLAINT

Plaintiff Judy Cramer, by undersigned counsel, files this Civil Complaint and in support alleges the following:

### I. Jurisdiction

1. The jurisdiction of this Court is invoked pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-5(f)(3), as amended by the Civil Rights Act of 1991 and 42 U.S.C. §1331 and 1343(a), and this Court's supplemental jurisdiction pursuant to 28 U.S.C. §1367.

2. Plaintiff has satisfied all procedural and administrative prerequisites to file suit under Title VII, and the Pennsylvania Human Relations Act in that:

    a. Plaintiff filed a timely Charge of Discrimination and Affidavit with the EEOC alleging gender discrimination on December 10, 2019;

    b. The EEOC issued a Notice of Right to Sue on March 25, 2021 ; and

    c. This Complaint is filed within 90 days of receipt of that notice.

    d. Plaintiff filed a Complaint of Discrimination with the Pennsylvania Human Relations Commission on or about February 25, 2020.   More than one year has passed and the PHRC has neither dismissed the Complaint nor entered into a conciliation agreement for which Plaintiff is a party.

3. Defendant C. Harper Ford, is an employer within the meaning of Title VII, 42 U.S.C. §2000e(b), because it employs more than 15 individuals and an Employer within the meaning of the Pennsylvania Human Relations Act. .

## II.  The Parties

4. Plaintiff Judy Cramer is an adult individual who resides at 216 Gay Street, New Alexandria, PA 15670.  Cramer's gender is female.

5. Defendant C. Harper Ford is a corporation with its principle place of business at 100 Harper Drive, Belle Vernon, PA 15012.  At all times relevant hereto it was an "employer" within the meaning of Title VII and the PHRA, and it was Cramer's employer.

## III.  Factual Background

6. Plaintiff incorporates paragraphs 1 through 5 as if fully restated.

7. Cramer worked for Defendant from May 28, 2019 until September 21, 2019 as an auto detailer.

8. During Cramer's employment she was subjected to sexual explicit remarks and inappropriate touching by her co-worker, David McLean.

9. One incident occurred when Cramer was on a ladder buffing the top of an SUV.

10. McLean approached Cramer by tapping on her leg.

11. McLean then told Cramer that she was standing where McLean's head was perfect and that she would really "enjoy it."

12. Cramer asked McLean what he meant and he said his "tongue."

13. Cramer and her daughter, who also worked for Defendant, approached her manager

and complained about what McLean had stated.

14. Cramer's manager promised that he would discuss the matter with McLean.

15. Approximately a few hours later, Cramer's daughter noticed McLean staring at Cramer and therefore, Cramer's daughter went and complained to the manager.

16. The manager then giggled at Cramer's daughter and told her, "With your mama bear having an ass like that she should be used to it."

17. McLean made the same sexual explicit comment to Cramer again on August 15, 2019 and Cramer again reported his conduct to Defendant.

18. This time Cramer's manager told her to overlook McLean's conduct because he was a moron and was going to be moving to a new site in a few weeks.

19. Cramer also told her manager about other co-workers who had been subjected to unwanted and unwelcome conduct of a sexual nature.  Specifically, those employees made pig noises when they walked by to use the restroom, called her and her mother bitches;" and laughed at the two women daily.

20. Cramer's manager instructed her to just ignore the comments by her co-workers that they will get over it and everything will be fine.

21. On September 17, 2019, McLean approached Cramer and told her he couldn't stop thinking about her and him having sex.

22. McLean said he knew they were both married, but he had sexual desires and needs that needed to be filled because his wife was living in Nigeria.

23. Cramer told McLean to leave her alone and that she didn't want to hear it anymore.

24. The following morning Cramer asked her manager if McLean could work beside him across the shop away from her and her daughter. Cramer also told her manager what McLean had said to her the day before.

25. This time her manager laughed and told Cramer to "tell that nigger lover to buzz off" and McLean was staying where he was to work.

26. McLean continued to stare and grin at Cramer.

27. It was then that Cramer and her daughter decided to leave because nothing was being done about their complaints.

28. Fifteen minutes later Cramer's manager called her daughter's cell phone and she told him how they were upset about McLean's continued sexual harassment.

29. Cramer's manager then finally decided McLean's conduct should be reported to Defendant's Human Resources department.

30. After the phone call, Cramer's daughter confided that the manager had rubbed her leg on numerous occasions whenever they rode together in the cart to get cars for detailing.

31. Cramer returned to work the next day and had a meeting with Human Resources along with her manager about McLean's inappropriate sexual misconduct.

32. Cramer was told the following day by her manager that McLean had been fired, however, her manager told her this in a sarcastic voice and with attitude.

33. The attitude by Cramer's manager continued and she decided to speak with Human Resources on her own to inform them of the inappropriate touching of her daughter and to request a transfer to another shop that had just opened.

34. Defendant's Human Resources told Cramer that she would call her back in a few

hours, however, Cramer never heard back about her request for a transfer.

35. Cramer then decided to speak with the owner to tell him everything that was going on.

36. Defendant's owner did not respond except to ask Cramer if she wanted to be relocated and Cramer said yes.

37. Cramer was then told by Defendant's owner that a gentleman from Human Resources would call her later that evening, however, Cramer never received a phone call.

38. Nor did Defendant ever transfer Cramer.

39. After not hearing from the gentleman in Human Resources, Cramer placed a call to him and was yelled at for not being at work so she told him why.

40. The gentleman then demanded to know if Cramer had contacted an attorney and for her to provide the attorney's name.

41. The gentleman said that if Cramer didn't provided the name that the conversation was over and then he hung up on her.

42. Defendant constructively discharged Cramer on September 21, 2019.

### Count I
### Title VII: Retaliation

43. Plaintiff incorporates by reference the allegations in Paragraphs 1 to 42, as if fully restated herein.

44. Cramer engaged in protected activity by reporting conduct she reasonably in good faith believed constituted a sexually hostile work environment.

45. A reasonable person in Cramer's position would have felt compelled to resign because of McLean's conduct and because Defendant took no action to stop it. Thus, Defendant constructively discharged Cramer because she opposed conduct made illegal under Title VII of the Civil Rights Act of 1964, in violation of 42 U.S.C. §2000e-3(a).

46. Defendant's retaliation was intentional and taken with reckless indifference to Cramer's federally protected right to not be retaliated against for opposing conduct made illegal under Title VII.

47. As a direct and proximate result of Defendant's intentional and reckless actions, Plaintiff has sustained the injuries set forth below:

    a.    Loss of income and benefits;
    b.    Humiliation;
    c.    Loss of reputation;
    d.    Inconvenience; and,
    e.    Emotional Distress

WHEREFORE, Plaintiff demands judgment pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, as amended by the Civil Rights Act of 1991 as follows:

    a.    That Defendant be ordered to reinstate Plaintiff into the position she occupied prior to Defendant's discriminatory actions, together with all benefits incident thereto, including, but not limited to wages, benefits, training and seniority;

    b.    That Defendant be required to compensate Plaintiff for the full value of wages she would have received had it not been for Defendant's illegal treatment of Plaintiff, with interest until the date Plaintiff is offered employment into a position substantially equivalent to the one which Plaintiff occupied on November 9, 2013;

    c.    That Defendant be required to provide Plaintiff with front pay if the Court determines reinstatement is not feasible;

    d.    That Defendant be required to compensate Plaintiff for lost benefits, including profit sharing and/or pension benefits until Plaintiff's normal retirement date;

    e.    That Plaintiff be awarded compensatory damages in an amount to be determined at the trial;

    f.    That Defendant be ordered to pay Plaintiff punitive damages;

    g.    That Defendant be enjoined from discriminating or retaliating against Plaintiff in any manner prohibited by Title VII;

    h.    That Plaintiff be awarded against Defendant the costs and expenses of this litigation, including a reasonable attorneys fee; and,

    I.    That Plaintiff be granted such further legal and equitable relief as the Court may deem just and proper.

## Count II
### Title VII: Gender Discrimination/Hostile Work Environment

49.    Plaintiff incorporates by reference the allegations in Paragraphs 1 to 48, as if fully restated herein.

50.    Cramer was also subjected to pervasive conduct of a sexual nature, directed at her because of her sex, and was detrimentally affected by that conduct. .

51.    Defendant was aware or should have been aware of the existence of the sexual hostile work place and took no action reasonably calculated to stop it.

52.    Plaintiff was constructively discharged because of her sex in violation of 42 U.S.C. §2000e-2(a)(1).

53.    Defendant's actions, and failure to act were done with malice and reckless indifference to Plaintiff's federally protected rights.

54. As a direct and proximate result of Defendant's intentional and reckless actions, Plaintiff has sustained the injuries set forth below:

    a. Loss of income and benefits;
    b. Humiliation;
    c. Loss of reputation;
    d. Inconvenience; and,
    e. Emotional Distress.

WHEREFORE, Plaintiff demands judgment pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, as amended by the Civil Rights Act of 1991 as follows:

   a. That Defendant be ordered to reinstate Plaintiff into the position she occupied prior to Defendant's discriminatory actions, together with all benefits incident thereto, including, but not limited to wages, benefits, training and seniority;

   b. That Defendant be required to compensate Plaintiff for the full value of wages she would have received had it not been for Defendant's illegal treatment of Plaintiff, with interest until the date Plaintiff is offered employment into a position substantially equivalent to the one which Plaintiff occupied on April 16, 2016;

   c. That Defendant be required to provide Plaintiff with front pay if the Court determines reinstatement is not feasible;

   d. That Defendant be required to compensate Plaintiff for lost benefits, including profit sharing and/or pension benefits until Plaintiff's normal retirement date;

   e. That Plaintiff be awarded compensatory damages in an amount to be determined at the trial;

   f. That Defendant be ordered to pay Plaintiff punitive damages;

   g. That Defendant be enjoined from discriminating or retaliating against Plaintiff in any manner prohibited by Title VII;

   h. That Plaintiff be awarded against Defendant the costs and expenses of this litigation, including a reasonable attorneys fee; and,

      I.      That Plaintiff be granted such further legal and equitable relief as the Court may deem just and proper.

## Count III
## PHRA

55. Plaintiff incorporates by reference Paragraphs 1 through 54 as if fully restated.

56. Defendant's constructive discharge of Cramer, and its creation of a sexually hostile work environment, violated the PHRA, 43 Pa. Conns. Stat.Ann. §955(a) et seq.

57. As a direct result of Defendant's violation of the PHRA, Cramer has lost wages and other economic benefits of her employment with Defendant, in addition to suffering emotional distress, depression, inconvenience and humiliation.

WHEREFORE, Cramer requests the following:

    a.    That the Court enter a judgment declaring Defendant's actions to be unlawful and in violation of the Pennsylvania Human Relations Act;

    b    That Defendant be ordered to reinstate Plaintiff and provide her accumulated seniority, fringe benefits and all other rights;

    c.    That Defendant be required to compensate Plaintiff for the full value of wages she would have received had it not been for Defendant's illegal treatment of Plaintiff, with interest from the date of discrimination, in addition to reimbursement for lost pension, social security, experience, training opportunities and other benefits;

    d.    That the Court award Plaintiff compensatory damages as a result of Defendant's violations of the Pennsylvania Human Relations Act;

    e.    That Defendant be enjoined from discriminating against Plaintiff in any manner that violates the Pennsylvania Human Relations Act;

    f.    That Plaintiff be awarded against Defendant the costs and expenses of this litigation and a reasonable attorney fee; and,

    g.    That the Court grant Cramer additional relief as may be just and proper.

Respectfully submitted,

**Rothman Gordon, P.C.**

/s/Samuel J. Cordes
Samuel J. Cordes
Pa. I.D. No. 54874

310 Grant Street, Third Floor
Pittsburgh, PA 15219
(412) 338-1163

Attorney for Plaintiff